# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.Z., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:17-cv-01819-SHK <br><br> OPINION AND ORDER |

Plaintiff M.Z.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff filed an application for DIB on August 30, 2012, alleging disability beginning on September 20, 2012. Transcript ("Tr.") 71.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on August 19, 2016, ALJ Alan J. Markiewicz determined that Plaintiff was not disabled. Tr. 20-28. Plaintiff sought review of the ALJ's decision with the Appeals Council; however, review was denied on August 4, 2017. Tr. 1-3. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the

---

[2] A certified copy of the Administrative Record was filed on January 22, 2018. Electronic Case Filing Number ("ECF No.") 17. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step

in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2017." Tr. 22. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since September 20, 2012, the alleged onset date (20 CFR 404.1571 et seq.)." Id. At step two, the ALJ found that "[Plaintiff] has the following 'severe' impairments: separated symphysis pubis (20 CFR 404.1520(c))." Id. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ["the Listings"] (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 23.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform a range of light work as defined in 20 CFR 404.1567(b) as follows: [Plaintiff] can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for a total of four hours, and sit for six hours, in an eight-hour workday with normal breaks; and can perform the postural activities occasionally.

Id. The ALJ then found, at step four, that "[Plaintiff] in unable to perform any past relevant work (20 CFR 404.1565)." Tr. 26.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on August 2, 1980 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563)." Tr. 27. The ALJ observed that "[Plaintiff] had at least a high school education and is able to communicate in English (20 CFR 404.1564)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a))." Id. Specifically, the ALJ found that Plaintiff could perform the "light exertional level" occupations of "Information Clerk[,]" as defined in the dictionary of occupational titles ("DOT") at DOT 273.367-018, "Office Helper: DOT #239.567-010[,]" and "Electronics Worker: DOT #726.687-010[.]" Tr. 27-28. The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after

"determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Tr. 28.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy[,]" the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from September 20, 2012, through [August 19, 2016], the date of th[e] decision (20 CFR 404.1520(g))." Id.

### C. Issue Presented

In this appeal, Plaintiff raises three issues, including whether the ALJ: (1) properly considered the applicability of Listing 1.06; (2) conducted a proper RFC assessment; and (3) properly considered Plaintiff's treating physician's opinion. ECF No. 18, Joint Stipulation at 3.

### D. Court's Consideration Of Each Of Each Of Plaintiff's Arguments

#### 1. Plaintiff Argues That She Meets Listing 1.06.

Plaintiff argues that she meets or medically equals Listing 1.06 because she cannot ambulate effectively for even short distances without the use of a prescribed single-point cane or a four-wheeled walker. ECF No. 18, Joint Stipulation at 4-5. Plaintiff argues that her inability to ambulate effectively without an assistive device is a result of "her chronic pubic diastasis and the resulting pain, lower extremity weakness, and gait abnormalities" that she has endured "since giving birth to her son on September 20, 2012." Id. at 4 (citing Tr. 289, 309, 469, 663).

Plaintiff argues that x-rays and MRIs in the record from October 2012 through February 2014 confirm that her condition remained unchanged throughout the relevant time period. Id. (citing Tr. 461, 617, 618). Plaintiff also argues that other medical evidence in the record demonstrates her "significant pain, pelvic floor and leg weakness, and diminished motor strength in her lower extremities[,]"

7

as well as her "substantial gait abnormalities." Id. (citing Tr. 283-84, 289-91, 301, 307, 469, 587, 610, 627, 663, 746, 754, 868). Finally, Plaintiff highlights recommendations, prescriptions, and notations in her medical record indicating that she uses a four-wheeled walker and single-point cane to help her ambulate, and that she was "unable to walk ten feet without stopping to rest." Id. at 4-5 (citing Tr. 288-89, 531, 570, 587, 663, 695, 746, 754, 868).

### 2. **Defendant's Response**

Defendant argues that Plaintiff's assertion is not persuasive for two reasons. First, Defendant argues that the ALJ supported his step-three finding by adopting the opinion of medical expert Eric Schmitter, M.D., that Plaintiff's impairments did not meet or equal Listing 1.06. Id. at 6-7. Defendant argues that by explaining that he adopted Dr. Schmitter's opinion, "the ALJ sufficiently articulated his reasoning for finding that Plaintiff's impairments did not satisfy any listing. Id. at 7.

Second, Defendant argues that Plaintiff "did not satisfy her burden of establishing the existence of every element of Listing 1.06." Id. at 8 (emphasis in original). Defendant argues that Listing 1.06 requires "an inability to ambulate effectively . . . without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities[,]" such as "the inability to walk without the use of a walker, two crutches or two canes." Id. at 7 (internal quotation marks omitted). Defendant argues that Plaintiff did not satisfy the criteria of Listing 1.06 because "Plaintiff started walking with a single point cane by September 2013" and, therefore, was not limited in the use of her bilateral upper extremities. Id. at 8 (citing Tr. 284).

### 3. **ALJ's Consideration Of The Applicability Of Listing 1.06**

As discussed above, the ALJ found at step three that Plaintiff does not have an impairment that meets or equals one of impairments described in the regulations. Tr. 23. The ALJ noted that "[t]his finding is supported by the opinion

8

of the impartial medical expert," Dr. Schmitter, who "concluded that [Plaintiff's] impairments and symptoms did not meet or medically equal the criteria of any listing." Tr. 23, 25 (citing Tr. 886-88). The ALJ noted that Dr. Schmitter supported his conclusion that Plaintiff did not meet any listing, by explaining that Plaintiff's "subjective pain and weakness . . . was not substantiated by examination or diagnostic testing[,]" "the evidence did not likely support the need for a cane[,]" and "surgery was recommended for pubic fusion, which should relieve [Plaintiff's] symptoms." Id. (citing Tr. 886-88).

### 4. Standard To Review ALJ's Assessment Of Applicability Of Listing 1.06

The Listings describe specific impairments of each major body system, which are "consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "The Secretary does not consider a claimant's impairment to be one listed in Appendix I solely because it has the diagnosis of a listed impairment[,] . . . an impairment meets a listed condition only when it manifests the specific findings described in the set of medical criteria for that listed impairment." Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990) (internal quotation marks and citation omitted).

Listing 1.06 requires a "[f]racture of the femur, tibia, pelvis, or one or more of the tarsal bones[,] [w]ith . . . [i]nability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.06. "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Id. at § 1.00B2b(1). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without

the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. "Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, [or] the inability to walk a block at a reasonable pace on rough or uneven surfaces . . . ." Id. at § 1.00B2b(2). "The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." Id.

"When an individual with an impairment involving a lower extremity or extremities uses a hand-held assistive device, such as a cane, crutch or walker . . . [t]he individual's ability to ambulate with and without the device provides information as to whether, or the extent to which, the individual is able to ambulate without assistance." Id. at § 100J(4). "The requirement to use a hand-held assistive device may also impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." Id.

"[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Marcia, 900 F.2d at 175.

### 5. ALJ's Finding Not Supported By Substantial Evidence

Dr. Schmitter's opinion, which the ALJ solely relied on in finding that Plaintiff did not meet Listing 1.06, is not supported by the record. As discussed above, the ALJ observed that Dr. Schmitter found that Plaintiff did not meet or medically equal the criteria of any listing because Plaintiff's pain and weakness were not supported by examination or diagnostic testing, because the evidence did not support Plaintiff's need for a cane, and because Plaintiff rejected a recommended pubic fusion surgery. Tr. 25. Because the ALJ supported his conclusion that Plaintiff does not meet Listing 1.06 by adopting Dr. Schmitter's

10

opinion in toto, the Court addresses each of the reasons provided by Dr. Schmitter, as adopted by the ALJ, in turn.

With respect to the first two reasons provided by Dr. Schmitter for finding that Plaintiff did not meet or equal a listing—that Plaintiff's pain and weakness were not supported by examination or diagnostic testing and that the evidence does not support Plaintiff's need for a cane—the Court finds that the record does not support these conclusions. Rather, an inspection of the record reveals many examination findings and testing results documenting Plaintiff's pain, weakness, and need for an assistive device to ambulate effectively as a result of her impairment that were ignored by Dr. Schmitter and, by extension, the ALJ, who adopted Dr. Schmitter's opinion at step three.

For example, on October 26, 2012, roughly one month after giving birth to her son, Plaintiff sought medical help for pelvic bone pain. Tr. 308. Plaintiff's medical records from that examination reveal that Plaintiff had "[d]ifficulty getting on and off the table and moving[,]" she "[c]ould not do a straight leg lift[,]" she had "suprapubic tenderness over the bony area[,]" she was "unable to tolerate [the] exam[,]" could "not abduct [her] legs[,]" and was ultimately sent for an x-ray that revealed a separation in Plaintiff's pubic symphysis. Tr. 308, 309, 461.

On November 13, 2012, Dr. Frederick Davis, M.D., examined Plaintiff and noted Plaintiff's complaints that she could not go upstairs to her bedroom because of pain and weakness from the pain. Tr. 307. Dr. Davis assessed that Plaintiff was in "moderate to severe distress[,]" her lumbar range of movement was "guarded[,]" her gait was "abnormal to markedly antalgic[,]" and that Plaintiff "walk[ed] out of the examination room to the waiting room with difficulty." Id. Dr. Davis noted that "it is clear that [Plaintiff] is in a significant amount of pain and discomfort which can limit her[,]" and assessed that Plaintiff had "pubic diastasis with continued leg weakness due primarily to pain" that would "take time for [Plaintiff] to finally heal and then work on strengthening." Tr. 307-08. Despite

11

assessing significant pain, Dr. Davis expressed "concern" for prescribing Plaintiff pain medication because "most things will cross into [Plaintiff's] breast milk and then transfer to the baby." Tr. 307. Dr. Davis, therefore, did not recommend medication at that time, and instead recommended physical therapy, applying heat and ice to the painful areas, and a lumbar corset. Id.

On November 15, 2012, Plaintiff saw Emily Lee for a physical therapy appointment and was noted to be experiencing "high level[s] of pain" that Plaintiff described as being at a level of ten out of ten. Tr. 305. Objective testing revealed that Plaintiff retained between a five and fifteen percent range of motion in all areas tested, and Plaintiff was noted to have "[p]ain with all motions." Id. Ms. Lee noted that Plaintiff could not walk up stairs, or walk for more than five minutes at a time, sit for more than twenty minutes, drive, sleep in bed, or get out of bed. Id. Ms. Lee noted that Plaintiff's symptoms were aggravated by "walking, stairs, getting into shower, forward, sitting for 20 min, standing 5 min, coughing [and] sneezing." Id. Plaintiff's gait and posture were noted to be key impairments. Id.

On December 7, 2012, Ms. Lee noted that Plaintiff "expresse[d] 10/10 pain constantly and every isometric exercise increases the pain beyond that." Tr. 303. Ms. Lee stated that "I know this separation is not going to repair over night [sic] but I am not sure that we are getting it even close enough to have the opportunity to heal." Id. Ms. Lee noted that she forwarded Plaintiff's x-rays to Dr. Davis and enquired with Dr. Davis whether an orthopedic consultation was warranted. Id.

On December 13, 2012, one month after declining to give Plaintiff pain medication due to concerns that it would cross into Plaintiff's breast milk, Dr. Davis instructed Plaintiff to stop taking ibuprofen and start taking Norco for her severe pain. Tr. 301. Dr. Davis specifically noted that Plaintiff should take the Norco for severe pain "if [Plaintiff] ha[d] to do a lot of walking." Id. Dr. Davis also responded to Ms. Lee's suggestion that Plaintiff consult an orthopedic surgeon, by noting that "pubic diastasis . . . has a very long recovery time" and

12

1  "[t]he challenge is that there is no way to stabilize that symphasis without
2  inhibiting future childbearing" and, therefore, Plaintiff "[w]ill need to wait for this
3  to heal." Id.

4  In December 2012 and January 2013, Ms. Lee noted that Plaintiff reported
5  pain levels at ten out of ten and also reported that it was still very painful to lie
6  down and that Plaintiff still could not walk upstairs at her home to sleep in her
7  room. Tr. 300. Ms. Lee noted that Plaintiff "ambulates with lateral trunk lean"
8  and that Plaintiff attempted a pillow squeeze exercise, but "had shooting pain going
9  down the front of [her] legs, so [the] exercise was stopped." Id. Ms. Lee reported
10 that Plaintiff expressed concern about having surgery to cure her symptoms
11 because Dr. Davis "said if they do anything surgical it may interfere with future
12 child bearing." Tr. 299. On January 25, 2014, Ms. Lee recommended a "hold on
13 [p]hysical [t]herapy due to no change in [Plaintiff's] pain or function." Tr. 297.

14 On January 30, 2013, Dr. Davis noted that Plaintiff's gate was markedly
15 impaired, Plaintiff "[s]till has lots of pain and debility which is expected with such
16 a painful injury[,]" and that Plaintiff was "[m]aking minimal progress in therapy
17 which again is expected." Tr. 295. Dr. Davis wrote that he "[w]ill send [Plaintiff]
18 for [o]rthopedic evaluation but given that [Plaintiff] does wish to have additional
19 childbearing there really are not a lot of surgical options that will preserve this, but
20 will send her for consultation." Id. (emphasis in original removed).

21 On February 15, 2013, Plaintiff reported to Ms. Lee that her pain "feels the
22 same but her doctor thinks its [sic] going to take at least a year for this to heal." Tr.
23 292. Ms. Lee noted that Plaintiff had weakness in hip flexation, that Plaintiff was
24 "unable to feel any trace contractions in [her] buttocks[,]" and that Plaintiff
25 displayed "left lateral lean with gait with right hip swing phase left lateral trunk
26 lean." Id. Ms. Lee noted that she requested that Dr. Davis prescribe Plaintiff a
27 front-wheeled walker. Id.

28

On March 8, 2013, Ms. Lee noted that she spoke with another one of Plaintiff's medical providers and learned that "the rate of healing is approximately 1 year." Tr. 291. Ms. Lee discharged Plaintiff to a home exercise program "due to [a] plateau in progress" and requested that Plaintiff be re-referred to physical therapy six months later to "progress her exercises." Tr. 290-91.

On March 28, 2013, Dr. Davis noted that Plaintiff was "still quite symptomatic and [her] gait [was] abnormal" and recommended that Plaintiff use a "rollator walker." Tr. 288. On May 15, 2013, physical therapist Sharon Ramos noted that Plaintiff was "unable to tolerate walking long distances due to pain from the stress fractures as well [as] the cramping in both legs." Tr. 287. Ms. Ramos added that Plaintiff "is unable to tolerate walking short distances at home from living room to bathroom, to the kitchen without holding on the walls or table." Id. Ms. Ramos assessed "[g]uarded" strength in both of Plaintiff's lower extremities, "poor" balance, and "severe antalgic limp[,]" and opined that Plaintiff could walk a maximum of ten feet before needing to rest for one minute. Tr. 288. Ms. Ramos further opined that Plaintiff "requires sitting in the home, and/or 4 wheel mobility with hand brakes for safety" and that Plaintiff "would not be able to function in the home, with a lessor mobility device . . . [and] would be bed/chair confined without this device." Id.

In June and August 2013, Dr. Davis observed that Plaintiff "has severe pain still and uses a rollator walker to walk." Tr. 285. Dr. Davis assessed that Plaintiff's gait was still markedly antalgic and that "[g]iven the severity of her pain [Plaintiff] will need to still be considered temporarily totally disabled." Id. Dr. Davis referred Plaintiff for acupuncture treatment. Tr. 287.

On September 23, 2013, Ms. Lee noted that Plaintiff was "walking with [a] walker currently[,]" but was returning to physical therapy to "work on weaning from the walker." Tr. 283. Ms. Lee noted that Plaintiff's eight-week treatment goal was to be able to walk without her walker and, instead, to be able to walk with a

single point cane for eight minutes. Id. To that end, Ms. Lee taught Plaintiff how to use a single point cane and instructed Plaintiff to start using it. Tr. 284. Ms. Lee assessed that Plaintiff could not walk "normally" and that "getting up from [a] chair, walking, [and] walking carrying baby" aggravated Plaintiff's symptoms. Tr. 283. Plaintiff reported pain levels of eight out of ten while resting, and ten out of ten with activity, and noted that she had "gone to psychology" to help her cope with her pain. Tr. 283-84. Plaintiff was noted to have "abdominal and leg weakness in [her] gait" and the ability to "hip flex in sitting with foot 1/2 inch." Tr. 284.

Here, the Court finds that—contrary to Dr. Schmitter's opinion that the ALJ adopted as the only support for finding that Plaintiff did not meet Listing 1.06—the evidence discussed above demonstrates that Plaintiff's pain, weakness, and required use of a cane and walker were supported by multiple examination findings throughout the record. Critically, the record reveals that Plaintiff did not even begin to wean herself off of the walker until September 23, 2013, when Ms. Lee set an eight-week goal of Plaintiff walking for eight minutes with a cane. Tr. 283. Therefore, contrary to Defendant's assertion that Plaintiff did not meet Listing 1.06 because Plaintiff started walking with a single point cane in September 2013 and was therefore no longer limited in the use of her bilateral upper extremities by her walker, the evidence suggests that Plaintiff's inability to ambulate without the use of a cane or walker, persisted for well over the twelve-month period required by Listing 1.06.

Moreover, an x-ray and MRI of Plaintiff's pelvis from February 7, 2014, revealed that the widening of Plaintiff's pubic symphysis had remained unchanged from the x-ray that was taken on October 26, 2012. Tr. 617-18. Thus, in addition to the examination findings discussed above, objective diagnostic tests revealed that Plaintiff's impairment that caused her inability to ambulate, remained unchanged seventeen months into Plaintiff's alleged disability period.

15

Accordingly, the Court finds that the ALJ erred by not adequately explaining this evidence when finding that Plaintiff did not meet Listing 1.06 at step three. Marcia, 900 F.2d at 175.

Finally, with respect to the third reason provided by Dr. Schmitter for finding that Plaintiff did not meet or equal a listing—that Plaintiff rejected surgery that could have helped ameliorate her condition—the Court finds that this was an invalid reason for finding that Plaintiff did not meet any listing, because Plaintiff provided a valid reason for rejecting the surgery. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of the claimant's pain testimony" unless one of a "number of good reasons for not doing so applies.").

As discussed above, Dr. Davis noted that surgery could affect Plaintiff's ability to have more children in the future. Tr. 295, 299, 301. Plaintiff told Ms. Lee that she was concerned about having surgery because Dr. Davis "said if they do anything surgical it may interfere with future child bearing." Tr. 299. The Court finds that Plaintiff adequately explained her reasons for rejecting surgery—that it could affect her ability to have children in the future—and that this reason was adequately supported by the record. As such, the Court finds that this was an invalid reason for concluding that Plaintiff did not meet Listing 1.06.

Accordingly, because the ALJ did not appropriately assess the aforementioned evidence that suggests that Plaintiff may have met Listing 1.06, the Court finds that the ALJ's decision was not supported by substantial evidence. The Court, therefore, finds that remand for further proceedings is appropriate so that the ALJ can examine whether Plaintiff meets Listing 1.06 in light of the evidence discussed above. Because the Court remands as to this issue, the Court does not address the remaining issues raised by Plaintiff.

///

///

## IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).

IT IS SO ORDERED.

DATED: 9/5/2018

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge